## McMillen v. Bailey.

(Decided June 11, 1937.)

I. G. MASON for appellant.

OSCAR M. SMITH for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This equity action was filed in the Logan circuit court by appellee and plaintiff below, Baron Bailey, against appellant and defendant below, W. L. McMillen. They will hereinafter be referred to, respectively, as "plaintiff" and "defendant." Plaintiff was the son-in-law of defendant and his wife will hereinafter be referred to as the "daughter." The parties were married some time about 1919, and immediately following their marriage defendant executed a deed of gift conveying to the daughter 40 acres of land on one side of the road running through his entire farm, located in Logan county, Ky., which contained about 140 acres.

On the part conveyed to the daughter was the only residence and outbuildings on defendant's entire farm. Adjoining the 40 acres so conveyed to the daughter, and on the same side of the road, plaintiff purchased from defendant 50 acres of land, making the entire tract occupied by himself and wife as containing 90 acres. In 1926 plaintiff and his wife, defendant's daughter, sold the mineral under the entire 90 acres, so owned by them in separate parcels, for $10 per acre, and with the $900 thus obtained they concluded to erect a new residence. When it came time to do so, the three, plaintiff, his wife (the daughter), and defendant, consulted over the matter and concluded that a much more eligible site was a spot on defendant's remaining land just across the road from the 40 acres that he had conveyed to his daughter. It was agreed that the new residence should be erected on that site, which was done at a cost of about $1,100 or $1,200,—$900 of which was the purchase price for the conveyed mineral above referred to.

About two years after finishing that residence, a barn was constructed on the same site, and possibly some other cheap outbuildings, which plaintiff says amounted in the aggregate to some $1,800, but which is disputed by defendant. Plaintiff and his wife, with their only child, thereafter occupied the new residence; but in 1934 they separated and the daughter moved to her father's home which was then in Russellville, Ky., to which place he had moved from his farm, although he constantly visited his son-in-law and daughter after they erected their new residence and sometimes stayed with them throughout the crop season—helping to put out and raise the started crops as well as to look after cultivation of his remaining 50 or 55 acres. After the separation, the wife filed divorce proceedings against her husband but her action was dismissed. The record does not disclose the ground she urged for a divorce, nor the reason why her petition was dismissed. Later, and in 1935, she filed a second divorce action which was answered by defendant, and in his answer he asserted counter grounds for divorce and made his pleadings a cross-petition against plaintiffs in that action. We are not informed of the grounds that either of them relied on in that action, but the record does contain the judgment of the court granting each of them a divorce.

. Between the dates of the filing of the two divorce actions and, of course, after the separation, plaintiff filed this action averring that defendant agreed verbally at the time the new residence was constructed to convey to *him* the building site upon which the improvements were made, which he stated was agreed to be 4 acres, but that he had failed and refused to do so on demand, and in his petition plaintiff prayed for a specific performance of the alleged verbal contract; but if that could not be granted, then that he be given a lien —not upon the stipulated four acres, but upon the entire remaining portion of defendant's farm of about 50 acres—for the enhanced value of defendant's land on account of the construction of the improvements, which enhancement he fixed at the amount he claimed to be the cost of the improvements.

Defendant's answer denied the material averments of the petition, including any agreement or promise to convey any part of his land to plaintiff. However, he made no claim individually to the improvements and admitted that the buildings were erected by his consent but with the understanding that he was to convey the occupied site to his daughter—never dreaming at that time that the marital relation would later be severed, or that any domestic storm was in the offing. He also counterclaimed in his answer and averred that plaintiff was indebted to him in an aggregate sum of more than $1,600 for various items set out in his pleadings, one of which was a note for $100, balance due on the 50 acres of land that plaintiff purchased from him, together with interest amounting to $30. He also averred a large part of the material that went into the improvements made by plaintiff came from his (defendant's) land, while other portions of the cost were furnished by him. Following pleadings made the issues and after evidence taken and the cause was submitted, the court rendered this judgment: "That the plaintiff, Baron Bailey, recover of the defendant, W. L. McMillen, the buildings and improvements placed upon the defendant, McMillen's land; and it is adjudged that the said Baron Bailey enter upon the said land of McMillen and remove therefrom the buildings placed thereon under an agreement, to-wit: Stock barn, tobacco barn and residence but the said plaintiff, Baron Bailey is to remove the aforesaid buildings from said defendant's land at a.

seasonable time to prevent any unnecessary injury or damage to said land in removing said buildings." Nothing whatever was said in the judgment relative to defendant's counterclaim, $130 of which was expressly admitted by plaintiff. From that judgment defendant prosecutes this appeal, but plaintiff has taken no cross-appeal from the judgment denying him a lien upon any portion of plaintiff's land for the enhanced value thereof because of the improvements.

In the domestic case of Glass v. Hampton, 122 S. W. 803, 804 (not elsewhere reported), we recognized the right of a vendee, who made improvements on land under an unenforcible contract to convey, to remove them upon the failure of his vendor to convey, but which right was confined in that opinion to instances where the improvements did not enhance the vendible value of the land upon which they were erected. Our exact language was: "But, unless the improvements do enhance the vendible value of the property, the person putting them on the premises will not be allowed anything except the privilege of removing them if this can practicably be done. Robards v. Robards, 85 S. W. 718, 27 Ky. Law Rep. 494; Poole v. Johnson, 101 S. W. 955, 31 Ky. Law Rep. 168; Bell v. Bair, 89 S. W. 732, 28 Ky. Law Rep. 614; Hawkins v. Brown, 80 Ky. 186; Thomas v. Thomas' Ex'r, 16 B. Mon. [420] 421; Pulliam v. Jennings, 5 Bush, 433."

Strictly following such limitations of the right of removal, it would appear that the right did not exist in this case, because the proof undoubtedly shows that the improvements did enhance to some extent the vendible value of defendant's land upon which they were erected. However, such error, if one, would doubtless be unavailable to defendant, since the removal of the improvements would be less detrimental to him than to give plaintiff a lien upon his land for the enhanced vendible value thereof by reason of their construction. But, however that may be, before any right may be asserted by plaintiff he must establish by his proof the necessary facts entitling him thereto. Those facts, in brief, are: That the circumstances and transaction under which he was induced to make the improvements were such as to create color of title in *him* and to inspire the bona fide belief on his part that *he* was to become the eventual owner of the land so occupied by him

when improvements are made in such circumstances, but because of some mandatory rule of law specific performance (statute of frauds in this case, section 470 of our Statutes), is denied to him. In such cases equity, though unable to enforce the contract, will extend to the one making the improvements the one or the other of the rights referred to, supra, dependent upon the facts of the case. So that, the first question presenting itself is: Whether or not plaintiff erected the improvements claimed by him in circumstances entitling him to either of such equitable remedies?

Plaintiff in giving his testimony was asked: "Q. How came you to build that house on land that you did not have title to? A. Because my wife's father had title to it and he wanted me to build on him and said I would never have any trouble about it; he would make me safe; said he would see that I was never troubled about it." That testimony related to the time of the building of the residence, and about two years thereafter when the barn was built plaintiff testified that he contemplated constructing the latter building on his wife's 40 acres, but that defendant insisted that it be erected on the same site of the newly constructed residence building; that he then called defendant's attention to the fact that he had not made any conveyance of the premises and said: "I would rather not build it there unless I was safe in doing it." Whereupon defendant, according to plaintiff, then said: "I will make you safe as much as four acres if it takes it. * * * I will see that you are not bothered about it." The substance of plaintiff's testimony was corroborated by two witnesses by the name of Miller, one of whom heard the conversation when the residence was built, and the other one heard it at the time the barn was built. In answer to leading questions, plaintiff was later made to say that he interpreted defendant's language to mean that the promised conveyance would be made to *him* (plaintiff), and the two Millers likewise said, in answer to similar leading question, that they so understood it, although one of them stated that "I understood that he (defendant) would make a deed to it" and that "he (defendant) told him (plaintiff) to go ahead and build and he would see that he never had any trouble over it." The other Miller witness said: "Mr. McMillen said he would take care of it; I don't know whether he

come around and said he would give a deed to it or not; but said he would take care of it.''

Defendant testified positively that he never promised plaintiff to make *him* any sort of conveyance of the property, but that he did promise his daughter to convey to her the occupied land, but that she never demanded it of him, and that he had made his will devising all of his property to his daughter, and which was done before the separation and, of course, before the obtention of the divorce. Defendant is shown by the testimony to have been very much attached to his daughter and relatively so to his son-in-law. He stated on the stand that he was ready to convey the land occupied by the improvements to whomsoever was entitled to it, but that he wanted his daughter and her husband to continue to occupy it with their only child, and that he was, therefore, ready at any time to carry out the agreement and understanding as he interpreted it. He expressly renounced any claim to any of the improvements made to the extent of funds and material not contributed by him, but he likewise insisted that, whatever might be the final determination of the cause, his daughter was interested to the extent of $400 of her money that plaintiff admits went into the improvements.

With the evidence as so briefly outlined, we are not altogether convinced that plaintiff made the involved expenditures under the bona fide belief that the premises were to be conveyed to *him* as a residence for himself and family. But, however that may be, we conclude that the judgment should be reversed, for two reasons: (1) That the wife, in the developed circumstances, was an absolutely necessary party to the litigation so as to entitle her to assert her rights, whatever they might be, and to not allow plaintiff to appropriate the entire improvements to his own use without her consent or agreement; and (2) that the court should have made some disposition of defendant's counterclaim, either by adjudicating the various items contained in it, or dismissing the counterclaim without prejudice so as not to bar future action to recover thereon if defendant should desire to avail himself thereof.

Section 28 of our Civil Code of Practice says: ''The

court may determine any controversy between parties before it, if it can do so without prejudice to others; if it cannot do so, it must require such other persons to be made parties, or must dismiss the action without prejudice." Numerous cases are cited in the notes to that section, in many of which we held that in the circumstances to which it applies, it was the duty of the court, either with or without motion therefor, to proceed as therein directed; and we conclude that the court should have done so in this case by ordering plaintiff to make his divorced wife a party to the proceeding, and that if he should fail to do so, then to dismiss his action without prejudice. As the judgment now stands plaintiff is given the privilege of removing the improvements and appropriating them, or the salvage thereof, to his individual use—thus ignoring the pro rata part of their value that is clearly due the daughter under the undisputed proof in the case. Moreover, subdivision (b) of subsection 2 of section 371 of the same Code expressly authorizes the court to dismiss an action without prejudice "for the want of necessary parties." We are not called upon at this time to indicate the character of judgment that should be rendered, since the daughter, whom we have held to be a necessary party, has not had her day in court. Perhaps plaintiff is barred by the judgment denying him a lien upon any part of defendant's land because he has not appealed therefrom, but no such bar interferes with the right of the daughter for a lien for her pro rata part of the enhanced value of her father's land because of the expenditure of her $400 in the erection of improvements thereon. Neither can we at this stage of the proceedings determine the rights as between plaintiff and his divorced wife in and to the removed improvements, or the salvage therefrom, if it should be again eventually held that the right of removal should be given.

Because of such conditions we will not undertake to make any such directions, but for the reasons stated the judgment is reversed, for proceedings consistent with this opinion.